DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Liban Muse Jama, ) | CASE NO. 1:12-cv-02881 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| United States Citizenship and Immigration ) | |
| Services, et al., ) | |
| ) | |
| Defendants. ) | |

Plaintiff Liban Muse Jama ("Jama") filed suit challenging actions taken by the United States Citizenship and Immigration Services ("USCIS") which resulted in the initiation of removal proceedings against Plaintiff. These actions include (1) the termination of Jama's refugee status, (2) the denial of his application to adjust status, and (3) the denial of his fraud waiver application.

This Court issued an order referring the case to Magistrate Judge Kathleen B. Burke for general pre-trial supervision. Defendants then filed 12(b)(1) and 12(b)(6) motions to dismiss. R. 14. The Magistrate Judge bifurcated the motions and recommends the 12(b)(1) motion to dismiss for lack of subject matter jurisdiction be granted. R. 31, PageID#: 551. Plaintiff filed his objections to the Magistrate Judge's Report and Recommendation, and Defendants filed a response to those objections. R. 32, 33. For the reasons that follow, the Court adopts the reasoning of the Magistrate Judge's Report and Recommendation that concludes Defendants' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction be granted.

(1:12-cv-02881)

Defendants' 12(b)(1) motion to dismiss is hereby **GRANTED** and Plaintiff's action is dismissed without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Liban Muse Jama, a resident of the Northern District of Ohio, is a Somalian native and citizen admitted into the United States in 2000 as a result of an I-590 application he filled out in 1999. *See* R. 1, ¶¶ 2-3, 11, 22. On this I-590 application, Jama listed his date of birth as being in 1985 and indicated he was unmarried, had no children, and that his mother was Dahabo Gelle Mohamed and his father was Muse Jama Ali. *See* R. 24-1, PageID#: 244-247. Plaintiff's complaint, filed November 19, 2012, seeks review by this Court of actions taken by the USCIS which resulted in the currently pending removal proceedings against him. *See* R. 1, PageID#: 20; *see also* R. 31 PageID#: 550. These USCIS actions include (1) the termination of his refugee status, (2) the denial of his application to adjust status, and (3) the denial of his application for fraud waiver. R. 1, PageID#: 20.

On November 12, 2010, after having provided inconsistent information in several immigration forms (including the I-590 application), Jama made sworn statements to the USCIS that he used different dates of birth in order to obtain employment, and that Jama's biological mother actually died in 1981 and his biological father died in 1997. *See* R. 1, ¶ 29; *see also* R. 24-1, PageID#: 238-39. Jama also stated that, because of Somali custom as opposed to formal legal proceedings, his aunt, Dahabo Gelle Mohammed became his mother after his biological mother died. R. 24-1, PageID#: 239.

(1:12-cv-02881)

As a consequence of these inconsistencies, the USCIS issued its notice of intent to terminate Jama's refugee status on February 17, 2011, because it found that Jama, at the time he applied for refugee status, was "not admissible to the United States as a derivative child of an alien classified as a principal refugee in that Dahabo Gelle Mohamed is not your biological mother or legally adoptive mother, and that at the time you were in fact married to Faumo Isxaq Adan in Kenya and are the father of five children born your wife."[1] *Id.* at PageID#: 186-87.

On April 8, 2011, USCIS issued its notice to terminate refugee status and denied Jama's I-602 application as well as his second I-485 application. *Id.* at PageID#: 170-178; 192-196. On April 14, 2011, Jama's application to reopen, filed two days earlier, was denied. *Id.* at PageID#: 198. On August 17, 2011, the USCIS initiated removal proceedings. *Id.* at PageID#: 227-28. The Immigration Judge issued decisions in the removal proceedings on June 14, 2012 and August 8, 2012. *See* R. 28-1, 26-1. The removal proceedings remain pending. R. 31, PageID#: 559.

On November 19, 2012, Plaintiff filed suit in this Court, alleging four causes of action: (1) "Violation of Due Process"; (2) "Any misrepresentations in Mr. Jama's immigration record are immaterial as he meets the definition of refugee at the time of admission within the meaning of the Immigration and Nationality Act and the U.N. Protocol and Convention"; (3) "Termination of Mr. Jama's refugee status by USCIS contradicts the principles of the U.N. Convention"; and (4) "The U.S. Department of Homeland Security has no authority to terminate refugee status." R. 1, PageID#: 8-18.

---

[1] Nephews are ineligible for derivative refugee status. 8 C.F.R. § 207.7(b)(6).

3

(1:12-cv-02881)

After the Court referred the case to Magistrate Judge Kathleen B. Burke for general pre-trial supervision, Defendants filed motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. R. 14. The Magistrate Judge considered the 12(b)(1) motion first and issued a Report and Recommendation. R. 31.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Magistrate Judge concludes this Court does not have jurisdiction to review Jama's claims because judicial review is only available if this matter concerns a "final agency action for which there is no other adequate remedy in a court" and here Jama cannot meet the first prong of the *Bennett* test which determines when agency action is "final."[2] R. 31, PageID#: 567-70 (citation omitted). More specifically, "rather than marking the 'consummation of the agency's decisionmaking process,' the USCIS's termination of Jama's refugee status was only an intermediate step in that process." *Id.* at PageID#: 570 (citation omitted). As such, the Magistrate Judge recommends Defendants' motion to dismiss for lack of subject matter jurisdiction be granted. *Id.* at PageID#: 551.

The Magistrate Judge identifies two additional reasons the Court lacks jurisdiction. First, 8 U.S.C. § 1252(a)(5) and (b)(9) channel review of immigration decisions, such as this, to the courts of appeal. Since "the USCIS's termination of Plaintiff's refugee status constitutes an action taken to remove an alien from the United States," the " review of th[at] termination

---

[2] In *Bennett*, the Supreme Court established a two-prong test for determining when agency action is "final." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

4

(1:12-cv-02881)

decision is channeled by § 1252(b)(9)" to "'vest[] exclusively in the courts of appeal.'" *Id.* at PageID#: 575 (citing *Aquilar v. ICE*, 510 F.3d 1, 9-13 (1st Cir. 2007)).

Next, the Magistrate Judge finds 8 U.S.C. § 1182(i)(2) "forecloses judicial review of th[e] discretionary decision" of the Attorney General "to grant or deny a request for a waiver of inadmissibility based on fraud or misrepresentation." *Id.* at PageID#: 576. The Magistrate Judge rejects Jama's argument that Jama "is not seeking review of the merits of the USCIS's denial of his application for a fraud waiver" but instead "wants the Court to review the USCIS's 'absolute refusal to adjudicate and render a legally reasoned decision on Mr. Jama's waiver application.'" *Id.* at PageID#: 576 (citation omitted).

Because the actions of which Jama seeks review are not final agency actions, and this statute alternatively prohibits review by district courts, the Magistrate Judge recommends Defendants' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction be granted.[3]

### PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

Plaintiff Jama makes a total of twenty-two objections to the Magistrate Judge's Report and Recommendation which Plaintiff organizes into five different categories. They are:

A. "Factual objections"

> One. Jama objects to the Magistrate Judge's statement that Jama "'sought derivative refugee status as the child of a principal alien classified as a refugee'" because "derivative refugee status does not exist in the immigration law as a lawful admission status." R. 32, PageID#: 585 (quoting R. 31, PageID#: 552).

---

[3] Plaintiff also filed a motion to strike. R. 27. The Magistrate Judge's Report and Recommendation denied the motion. R. 31, PageID#: 551. Plaintiff has not objected to this portion of the Report and Recommendation.

5

(1:12-cv-02881)

<u>Two</u>. Jama objects to the Magistrate Judge's characterization that Jama provided his name, date of birth, and family information to the "U.S. Government Officer who completed his I-590 application" because Jama's "sworn statement to USCIS on November 12, 2010 makes it clear that the only information he directly supplied to the U.S. Government Officer who completed his I-590 application was his name" because "[h]is sworn statement also indicates that the same U.S. Government Officer filled out the form in response to questions that his aunt answered through an interpreter." *Id.* at PageID#: 586.

B. "Objections to the Magistrate Judge's Portrayal of Plaintiff's Claims"

<u>One</u>. Jama objects to substantive findings made by the Magistrate Judge that are "beyond the scope of the 12(b)(1) jurisdictional issue at hand." R. 32, PageID#: 586. He states that "[t]he references to due process violations made by Mr. Jama in his Brief in Opposition of the Motion to Dismiss were not supplied to supplement Count 1 of the Complaint," a due process claim. Instead, Mr. Jama argues he articulates a separate argument that the denial by this Court of jurisdiction would violate due process, and that "these two arguments are unrelated and do not contradict each other, as the" Magistrate Judge suggests. *Id.* at PageID#: 587.

C. "Objections to Magistrate Judge's Recommendations with Respect to the Finality Rule Under Section 704 of the APA"

<u>One</u>. Jama objects to the Magistrate Judge's reliance on *Qureshi v. Holder* for the conclusion that termination of refugee status is not final agency action because the Immigration Judge and the BIA "retain the power to halt removal proceedings altogether." R. 32, PageID#: 588 (citation and internal quotes omitted). Jama argues "the power of the IJ and BIA to 'halt removal proceedings altogether' based on other, unrelated forms of relief, can do nothing to address or reverse USCIS's act of improperly terminating Mr. Jama's refugee status." *Id.* at PageID#: 588

<u>Two</u>. Jama objects to the Magistrate Judge's reliance on *Qureshi* because *Qureshi* was an asylee status case, and the present matter is a refugee status case. Whereas one who has had asylee status terminated "may renew his or her aslyum application," with regards to one who has had refugee status terminated, "[t]here is no such thing as 'a new refugee application' in Immigration Court." *Id.* at PageID#: 589. Even though Jama may pursue "additional and unrelated forms of relief," these other forms of relief "cannot be equated to, and do not rise to the level of, reinstatement of his refugee status." *Id.*

6

(1:12-cv-02881)

>Three. Jama objects to the Magistrate Judge's position that, given Jama can file for asylee status, this would "be a remedy only as to Mr. Jama's adjustment of status cause of action," and "does nothing to preclude jurisdiction with respect to Mr. Jama's [refugee status] cause of action." *Id.* at PageID#: 590. Additionally, "a renewed asylum application would impermissibly shift the burden from the DHS's duty to prove it had a valid reason to terminate refugee status, to Mr. Jama's duty to prove the new asylum claim." *Id.* (citations omitted).

>Four. Jama argues that *Cabaccang*, relied on by the Magistrate Judge, is distinguishable from this case because in *Cabaccang*, "the adjustment of status application was able to be renewed in Immigration Court based on the underlying I-140 petition," while here "there is no underlying immigrant petition benefitting Mr. Jama." *Id.* at PageID#: 591.

>Five. Jama objects to the Magistrate Judge's reliance on *Cabaccang* at the expense of dismissing two district court cases, *Sidhu* and *Singh*, and furthermore that *Sidhu* and *Singh* are distinguishable from *Cabaccang*, because, since *Cabaccang* involved adjustment of status applications and such applications can be renewed, there is "further administrative relief from removal available to the foreign national." *Id.* at PageID#: 591-92. "By contrast . . . the regulations do not confer the same jurisdiction on Immigration Judges in cases of termination of refugee status," and as such, *Singh* and *Sidhu* were not undercut by *Cabaccang*. *Id.* at PageID#: 592.

>Six. Again referring to the district court cases, Jama objects "with the Magistrate Judge's contention that 'the rationale contained in *Qureshi*, *Cabaccang*, *Pinho* and other cases relied on by Defendants are more persuasive than the reasoning of District Courts in *Singh* (N.D. Ill.) and *Sidhu*'" because the "simple fact that removal proceedings are pending does not mean that Mr. Jama's claim will be reviewed by the Immigration Judge" as the Immigration Judge does not have "the ability to grant the alien relief during the removal process." *Id.* at PageID#: 592-93 (citation and internal quotes omitted).

>Seven. Jama makes a factual objection to the Magistrate Judge's statement that "'[t]he pending removal proceedings resulted from the termination of Jama's refugee status because the USCIS is required by regulation to initiate removal proceedings following termination of refugee status'" because "Mr. Jama was placed in removal proceedings four months after his refugee status was unlawfully terminated, and only when his subsequent asylum application was referred to Immigration Court." *Id.* at PageID#: 593 (citation omitted).

7

(1:12-cv-02881)

>Eight. Jama objects to the Magistrate Judge's reliance on *Bennett* for the proposition that "'the USCIS's termination of Jama's refugee status was only an intermediate step in [the decisionmaking process]'" because "Mr. Jama's legal consequence under *Bennett* is not removal from the United States, but rather *termination of his refugee status*." *Id.* (citation omitted).
>
>Nine. Jama objects to the Magistrate Judge's reliance on *Qureshi* because "should the IJ and BIA find him removable, Mr. Jama would only have standing to request a review of his newly filed asylum application and any other unrelated forms of relief from removal; but not termination of refugee status." *Id.* at PageID#: 594
>
>Ten. Jama objects to the "Magistrate Judge's application of 8 C.F.R. § 1245.2(a) to the instant case, as well as the statement that 'Plaintiff maintains the ability to renew his adjustment of status application during the removal proceedings pursuant' to this regulation" because § 1245.2(a) does "not pertain to adjustment of status based on refugee status" but instead "relate[s] to adjustments based on approved underlying immigrant petitions" and "Mr. Jama has no basis for renewing his adjustment of status application in Immigration Court." *Id.* at PageID#: 595 (citation omitted).
>
>Eleven. Jama objects "to the Magistrate Judge's finding that 'the fact that [Mr. Jama] maintains the ability to renew his adjustment of status application during the pendency of removal proceedings and the fact that removal proceedings are pending do demonstrate the lack of finality in the USCIS's decision to deny Plaintiff's application to adjust status'" because "applications for adjustment of status require an underlying immigrant petition or some other legal predicate," and as such "Jama does not maintain the ability to renew his adjustment of status application in removal proceedings unless his unlawfully terminated refugee status is reinstated." *Id.* at PageID#: 595-96 (citation omitted).
>
>Twelve. Jama objects "to the Magistrate Judge's failure to address Plaintiff's arguments in his Motion in Opposition of Defendant's Motion to Dismiss, with respect to exhaustion of administrative remedies pursuant to *Darby v. Cisneros*, 509 U.S. 137 (1993)." *Id.* at PageID#: 596.
>
>Thirteen. Jama objects to the Magistrate Judge's statement that addressing the second prong of the *Bennett* test is not necessary because Jama has not met the first element. This is because "Mr. Jama has in fact met the first prong of the *Bennett* finality test" and "we submit that a thorough analysis of the second prong pertaining to 'legal consequences' of the USCIS's decision, sheds additional light on Mr. Jama's satisfaction of the first prong." *Id.*

(1:12-cv-02881)

> D. "Objections to Magistrate Judge's Recommendations with Respect to the Application of 8 U.S.C. §1252(a)(5) and 8 U.S.C. §1252(b)(9)"
>
>> One. Relying again on *Singh*, Jama objects "to the Magistrate Judge's interpretation of 8 U.S.C. §1252(b)(9) to essentially apply in absolute terms every time a person is placed in removal proceedings" because "Mr. Jama is only seeking review of his refugee status termination, separate, apart and independent of his removal proceedings." R. 32, PageID#: 597.
>>
>> Two: Jama objects to the Magistrate Judge's rejection of his argument that, even if § 1252(b)(9) applies to "claims prior to removal proceedings," these "*only pertain*[] *to issues that are likely to be litigated in removal proceedings*." *Id.* at PageID#: 598.
>>
>> Three: Jama objects to the Magistrate Judge's finding that the termination of Jama's refugee status triggered the removal proceedings, and as such, was an "'action taken . . . to remove'" Jama because this "suggests that merely triggering removal proceedings makes USCIS's decision subject to the jurisdiction stripping provision of 8 U.S.C. §1252(b)(9)," contrary to the holding of *Aguilar* which demonstrates that "[c]ourts consistently have recognized that the term 'arising from' requires more than a weak or tenuous connection to a triggering event." *Id.* at PageID#: 599 (quoting *Aguilar*, 510 F.3d 346 at 10).
>>
>> Four. Jama objects to the Magistrate Judge's statement that Jama "'may obtain such review in the Court of Appeals following the completion of his removal proceedings in the Immigration Court and Board of Immigration Appeals'" because "Mr. Jama may not obtain such review in the Court of Appeals" as "the termination issue will not be part of the record in removal proceedings." *Id.* at PageID#: 599-600.
>
> E. "Objection to Magistrate Judge's Recommendation Denying Jurisdiction to Address Mr. Jama's Fraud Waiver Pursuant to 8 U.S.C. § 1159(c)"
>
>> One. Jama objects to the Magistrate Judge's statement that "the USCIS did consider and deny Jama's I-602 application for a fraud waiver" because the application was not denied on the merits but was instead based on the USCIS's finding that Jama was "ineligible to apply for the benefit sought." R. 32, PageID#: 600.
>>
>> Two. Jama objects to the Magistrate Judge's refusal to recognize his distinction between "requesting this court to make a determination as to the merits of Mr. Jama's I-602 application" and requesting the Court to "deem Mr. Jama eligible to

9

(1:12-cv-02881)

apply for a I-602 waiver," citing to *Pinho v. Gonzales*, 432 F.3d 193 (3d Cir. 2005) for support. *Id.* at PageID#: 601.

## STANDARD OF REVIEW

Upon a party's objection(s) to a magistrate judge's report and recommendation, a district court conducts a *de novo* review of those portions of the report and recommendation to which objections have been made. 28 U.S.C. § 636(b); *see also* Fed. R. Civ. P. 72(b)(3); *see also United States v. Curtis*, 237 F.3d 598, 602-03 (6th Cir. 2001).

## RELEVANT LAW

"Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citation omitted). There are two types of motions to dismiss for lack of subject matter jurisdiction: facial and factual attacks. "A *facial* attack is a challenge to the sufficiency of the pleading itself." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Upon facial attack, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* (citation omitted). "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Id.* "On such a motion, no presumptive truthfulness applies to the factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Here, the Court agrees with the Magistrate Judge's observation that "the Motion could have been briefed as a facial attack on the existence of subject matter jurisdiction," but, since "both parties have

10

(1:12-cv-02881)

submitted and have referred to Exhibits," the "evidence outside the pleadings has been considered herein." R. 31, PageID#: 562.

Plaintiff's complaint asserts three jurisdictional predicates: 28 U.S.C. § 1331, 28 U.S.C. § 2201, and 5 U.S.C. §§ 555, 701 *et seq*. R. 1, PageID#: 5. Title 28 U.S.C. section 1331, the federal question statute, provides "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. But "[i]t is not sufficient under 28 U.S.C. § 1331 that a dispute is in some way connected with a federal matter." *Leonard v. Orr*, 590 F. Supp. 474, 477 (S.D. Ohio 1984) (citation omitted). "Rather, a right or immunity created by the Constitution or laws of the United States must be an essential element of Plaintiff's cause of action." *Id.* (citation omitted). With regards to 28 U.S.C. § 2201, the Declaratory Judgment Act, its operation "is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). With it, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Id.* As such, the Magistrate Judge correctly concludes the Administrative Procedure Act ("APA") is the only authority cited by the Plaintiff which could provide jurisdiction. *See* R. 31, PageID#: 566.

The Administrative Procedure Act provides, in relevant part:

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.

5 U.S.C. § 704. The APA does not apply when "statutes preclude judicial review" or when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The Magistrate Judge correctly observes that "Jama does not identify any statute that expressly makes the USCIS's actions he challenges reviewable in District Court," and as such, this Court does not

11

(1:12-cv-02881)

have jurisdiction unless the agency action is a "'final agency action for which there is no other adequate remedy in a court.'" *See* R. 31, PageID#: 567 (quoting 5 U.S.C. § 704).

The Supreme Court has held two conditions must be satisfied in order for agency action to be final. "First, the action must mark the 'consummation' of the agency's decisionmaking process" and cannot "be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citation omitted). "[S]econd, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Id.* at 178. As the Magistrate Judge observes, "[n]either Plaintiff nor Defendants have cited to any case that specifically addresses the precise issue here, i.e., whether the USCIS's termination of an alien's refugee status constitutes final agency action." R. 31 PageID#: 568. But "the parties do cite cases that have considered whether the USCIS's termination of an alien's asylee status or its denial of an application to adjust status is final agency action within the meaning of the APA." *Id.* The Court agrees with the Magistrate Judge that "[t]hese cases provide a useful framework for resolving the issues before this Court." *Id.*

Where removal proceedings are pending, such as in this case, further administrative relief is available and the termination of an alien's current status is an intermediate, nonfinal agency action. *See Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (holding that termination of asylum is not final agency action because it is "only an intermediate step in a multi-stage administrative process, succeeded (or accompanied) by removal proceedings"); *see also Cabaccang v. USCIS*, 627 F.3d 1313, 1317 (9th Cir. 2010) (holding the district court did not have jurisdiction to review denial of adjustment of status where "removal proceedings are

12

(1:12-cv-02881)

pending") (quoted by *Qureshi* at 663 F.3d at 781); *see also Pinho v. Gonzalez*, 432 F.3d 193, 202 (3rd Cir. 2005) (holding agency action is final "where there are no deportation proceedings pending in which the decision might be reopened or challenged").

Judicial review of orders of removal is governed by 8 U.S.C. § 1252. Sub-paragraph (a)(5), entitled "Exclusive means of review" provides "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section." 8 U.S.C. 1252(a)(5). Subparagraph (b)(9) of the same statute (entitled "Consolidation of questions for judicial review") provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). The Supreme Court has characterized (b)(9) as an "unmistakable 'zipper' clause." *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482-483 (1999). The First Circuit has expounded upon the meaning of this at length:

> Congress's purpose in enacting section 1252(b)(9) is evident. As its text makes manifest, that proviso was designed to consolidate and channel review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions *vested exclusively in the courts of appeals*. *See* 8 U.S.C. § 1252(a)(5) (ordaining that "a petition for review filed with an appropriate court of appeals ... shall be the sole and exclusive means for judicial review of an order of removal"). In enacting section 1252(b)(9), Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings.

(1:12-cv-02881)

*Aguilar*, 510 F.3d at 9 (emphasis added). The *Aguilar* court also states:

> By its terms, the provision aims to consolidate "all questions of law and fact" that "arise from" either an "action" or a "proceeding" brought in connection with the removal of an alien. *See* 8 U.S.C. § 1252(b)(9). Importantly, the statute channels federal court jurisdiction over "such questions of law and fact" to the courts of appeals and explicitly bars all other methods of judicial review, including habeas. *Id.*

*Id.*

Finally, 8 U.S.C. § 1182 gives the Attorney General the discretion to waive an immigrant's inadmissibility because of fraud or misrepresentation.[4] 8 U.S.C. § 1182. But the same statute also states "[n]o court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph (1)." 8 U.S.C. § 1182(i)(2).

## ANALYSIS

In light of these legal standards, it is clear Plaintiff's objections do not overcome the reasoning of the Magistrate Judge's thorough Report and Recommendation.

A.) "Factual Objections"

In light of these legal standards, it is clear Plaintiff's objections do not overcome the Magistrate Judge's thorough and well-reasoned Report and Recommendation. First, Plaintiff's two "Factual Objections" in section "A" are not relevant because, in Plaintiff's own words, they are "inapplicable to the immediate issue at hand - jurisdiction." R. 32, PageID#: 585.

B.) "Objections to Magistrate Judge's Portrayal of Plaintiff's Claims"

---

[4] Although the statute refers to the Attorney General ("AG"), as a result of amendments, references to the AG must be read to refer to the Secretary of Homeland Security and, by extension, the USCIS. *See* 6 U.S.C. § 271(b); *see also* 6 U.S.C. § 557; *see also Gomez-Granillo v. Holder*, 654 F.3d 826, 833 (9th Cir. 2011).

(1:12-cv-02881)

Plaintiff's next objection, found in section "B," is that the Magistrate Judge mischaracterized Plaintiff's argument that, were the Court to refuse to recognize jurisdiction, such a holding "would be a violation of due process." *Id.* at PageID#: 587. With regards to this objection it is enough to say that a court cannot create its own jurisdiction. *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17 (1951)  ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation . . ."); *see also Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

C.) "Objections to Magistrate Judge's Recommendations with Respect to the Finality Rule Under Section 704 of the APA"

Plaintiff's thirteen objections in section "C" collectively represent Plaintiff's disagreement with the Magistrate Judge's conclusion that relied on *Cabaccang*, *Qureshi*, and *Pinho* at the expense of *Singh* and *Sidhu* to find that Jama cannot meet the first prong of the *Bennett* finality test, and thus the action from which he appeals is not a final agency action subject to judicial review. The passage where the Magistrate Judge analyzes *Singh* and *Sidhu* reads as follows:

> The reasoning in *Sidhu* has been undercut by the Ninth Circuit's subsequent decision in *Cabaccang*. Indeed, a recent Northern District of California case found that *Sidhu* is "no longer germane." *Singh v. Bardini*, 2012 U.S. LEXIS 24309, *9-11 (N.D. Cal. Feb. 27, 2012) (finding that *Cabaccang* rejected the reasoning in *Sidhu* and instructs that the USCIS's decision to terminate an alien's status is not final where an immigration judge, in the course of removal proceedings, has the ability to grant the alien relief during the removal process). Because *Singh* (N.D. Ill.) relied on *Sidhu*, its reasoning also has been undercut. Moreover, the analysis and rationale contained in *Qureshi*, *Cabaccang*, *Pinho* and other cases relied on by Defendants are more persuasive than the reasoning of the District Courts in *Singh* (N.D. Ill.) and *Sidhu*. Applying that reasoning to this case, Jama admits in his Complaint that removal proceedings are pending. Doc. 1, ¶ 16. The pending

15

(1:12-cv-02881)

> removal proceedings resulted from the termination of Jama's refugee status because the USCIS is required by regulation to initiate removal proceedings following termination of refugee status. 8 C.F.R. § 207.9 ("Upon termination of refugee status, USCIS will process the alien under sections 235, 240 and 241 of the Act."). Thus, rather than marking the "consummation of the agency's decisionmaking process," the USCIS's termination of Jama's refugee status was only an intermediate step in that process. *See Bennett*, 520 U.S. at 177-178.

R. 31, PageID#: 570.

The Court agrees with the Magistrate Judge that the unanimous opinions of the courts of appeal that have addressed the issue are more persuasive and well-reasoned than the unreported opinions of *Singh* and *Sidhu*, both of which have been explicitly undercut by the Ninth Circuit. As the Magistrate Judge recognized, "*Singh* relied on *Sidhu* for its conclusion 'that the USCIS's termination decision was final because: (1) the plaintiff had no right to appeal that decision; (2) the plaintiff would bear the burden of proving a new asylum claim in the removal proceeding whereas the defendants [USCIS] had borne the burden of proving it had a valid reason to terminate asylum status . . . ; and (3) the termination of the plaintiff's asylum had a direct and immediate effect on the plaintiff's day-to-day life, including the loss of the plaintiff's legal right to live and work in the United States, and to travel in and out of the United States.'" R. 31, PageID#: 569-70. Relying on *Singh* and *Sidhu*, Jama maintains because he cannot make the "same legal arguments" in later proceedings and will lose certain benefits means the termination of his refugee status was final agency action. R. 32, PageID#:590, 593-94.

As an initial matter, the practical legal effects of agency decisions on Jama's life goes to the second element of the *Bennett* test, not the first. *See Bennett*, 520 U.S. at 178 (holding the second element asks whether the action is one from which "legal consequences will flow").

(1:12-cv-02881)

Further, just because legal burdens and standards of review might change because of a certain agency decision does not make that agency decision final. *See Qureshi*, 663 F.3d at 782 (noting that "[e]videntiary burdens serve to inform a factfinder's decisions" and "[a]lthough burdens sometimes dictate an agency's eventual decision, that decision is not consummated until it is actually made"). Additionally, "[i]t is immaterial that this further review takes place in a different agency within a different executive department." *Cabaccang*, 627 F.3d at 1316. In light of these well-reasoned opinions, the Magistrate Judge correctly refused to rely on *Singh* and *Sidhu* to find Jama has met the first element of the *Bennett* finality test.

This case is not distinguishable from the circuit opinions relied on by the Magistrate Judge, as Plaintiff maintains in his objections. *See, e.g.,* R. 32, PageID#: 589, 591. This is because, as in *Qureshi* and *Cabaccang*, removal proceedings remain pending against Jama. Plaintiff seeks to evade this by arguing the forms of relief available in the removal proceedings are "unrelated." *See id.*, PageID#: 594. But even if Jama considers the other forms of administrative relief to be "unrelated," the fact remains that they are forms of administrative relief. Jama does not dispute that removal proceedings are pending. *See* R. 1, ¶ 16; *see also* R. 32, PageID#: 584 ("Mr. Jama has renewed his asylum claim in removal proceedings in Immigration Court where that claim remains pending"). "Pending removal proceedings make termination an intermediate, nonfinal action, because 'when removal proceedings are pending, further administrative relief is available.'" *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (quoting *Cabaccang v. USCIS*, 627 F.3d 1313, 1317 (9th Cir. 2010)). The Court therefore agrees

(1:12-cv-02881)

with the Magistrate Judge's refusal to rely on *Singh* and *Sidhu* as persuasive authority, and as such, Plaintiff's objections in section "C" are overruled.

D.) "Objections to Magistrate Judge's Recommendations with Respect to the Application of 8 U.S.C. §1252(a)(5) and 8 U.S.C. §1252(b)(9)"

Plaintiff's objections in section "D" collectively disagree with the Magistrate Judge's conclusion that the actions Jama seeks review of are "action[s] taken or proceeding[s] brought to remove an alien from the United States" and as such can only be reviewed by a court of appeal. *See* R. 32, PageID#: 592-600. Specifically, Jama argues that not only did the USCIS's termination of Jama's refugee status not trigger the removal proceedings against him, even if it did, "the triggering event in this case cannot properly be construed as anything more than a 'weak connection' to removal proceedings." *Id.*, PageID#: 599. But the immigration statute entitled "Termination of refugee status" states "[t]he refugee status of any alien (and of the spouse or child of the alien) admitted to the United States under section 207 of the Act will be terminated by USCIS if the alien was not a refugee within the meaning of section 101(a)(42) of the Act at the time of admission." 8 C.F.R. § 207.9. Further, upon such termination, "USCIS will process the alien under sections 235, 240, and 241 of the Act," thus beginning removal proceedings. *Id.* Plaintiff's objection that his termination did not trigger the removal proceedings because "Mr. Jama was placed in removal proceedings four months after his refugee status was unlawfully terminated, and only when his subsequent asylum application was referred to Immigration Court" is of no moment in light of the plain language of 8 C.F.R. § 207.9. *See* R. 32, PageID#: 593.

(1:12-cv-02881)

Accordingly, the Court agrees with the Magistrate Judge's conclusion that this Court does not have jurisdiction to review Jama's claims under § 1252(b)(9). If final agency action does take place, Jama may seek review in an appropriate court of appeal. *See* 8 U.S.C. § 1252(b)(9); *see also Aquilar*, 510 F.3d at 9 (noting that § 1252(b)(9) "was designed to consolidate and channel review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeal").

E.)    "Objection to Magistrate Judge's Recommendation Denying Jurisdiction to Address Mr. Jama's Fraud Waiver Pursuant to 8 U.S.C. § 1159(c)"

Jama's final two objections found in section "E" amount to the same argument the Magistrate Judge rightly rejected. Namely, Jama argues he is not "requesting this court to make a determination as to the merits of Mr. Jama's I-602 application," but is instead "simply ask[ing] that it deem Mr. Jama eligible to apply for a I-602 waiver." R. 32, PageID#: 601. But as the Magistrate Judge recognized, the record clearly shows Jama's waiver application was considered and denied. *See* R. 24-1, PageID#: 195-96. But even if the USCIS acted improperly in considering Jama's waiver application, Jama's reliance on *Pinho* is misplaced because in *Pinho* there were no removal proceedings pending, as there are here. *See Pinho*, 432 F.3d at 200-201. As such, the Court agrees with the Magistrate Judge that "the Court lacks jurisdiction to consider Jama's request for review of the USCIS's denial of his application for a fraud waiver." R. 31, PageID#: 577.

(1:12-cv-02881)

## CONCLUSION

The Court has conducted a *de novo* review of the Magistrate Judge's Report and Recommendation. Defendant's objections are without merit and overruled. The Court adopts the conclusion and analysis of the Magistrate Judge's Report and Recommendation. As such, Defendants' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is **GRANTED** and Plaintiff's cause is dismissed without prejudice.

      IT IS SO ORDERED.

|   |   |
|---|---|
|   August 19, 2013   |   *s/ David D. Dowd, Jr.*   |
| Date | David D. Dowd, Jr. |
|  | U.S. District Judge |